UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DANIELLE D. BRIDGE,                                              Case No. 19-10841 ts7

    Debtor.

## OPINION

Before the Court is Melanie and Matthew Chavez's expedited motion for relief from the automatic stay to proceed with a state court trial scheduled to start in less than two weeks. The Debtor objected and a final, evidentiary hearing was held on May 1, 2019. The Court finds that there is insufficient cause to modify the automatic stay, so the motion will be denied. Part of the analysis regarding "cause" for relief from the automatic stay involves movants' concern that without stay relief they could not proceed with their vicarious liability claim against a nondebtor third party. That concern is addressed in some detail.

### I.     FACTS

The Court makes the following findings of fact for the limited purpose of ruling on the motion:[1]

Debtor is a medical doctor specializing in obstetrics and gynecology. She had a private practice in Los Alamos, New Mexico, providing care through her wholly-owned limited liability company Bridge Care for Women, LLC. She now works for a Presbyterian hospital in Santa Fe, New Mexico.

---

[1] The Court took judicial notice of the docket in the bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

On February 14, 2016, Melanie Chavez, one of Debtor's patients, was admitted to the Los Alamos Medical Center to deliver her baby (Leah). Although the record is not clear on this point, Debtor apparently had admitting and surgical privileges at the hospital.

There were significant complications with the birth. Because the baby's heartbeat rate decreased to a dangerous level, Debtor performed an emergency C-section at around 10:00 p.m. on February 14, 2016. The umbilical cord was wrapped around the baby's neck. Debtor cut the umbilical cord, delivered the baby, and intubated her.[2]

There seems to be no dispute that after the C-section delivery, Ms. Chavez began to hemorrhage. Movants allege that the bleeding was severe and was not detected or stopped nearly as soon as it should have been. The Court will not go into the detailed allegations, except to say that movants allege that the unchecked hemorrhaging caused Ms. Chavez severe permanent injuries, which they allege were the fault of Debtor, the hospital, or both. Debtor and the hospital deny any negligence, malpractice, or other fault or wrongdoing. The hospital also denies that Debtor was its employee, servant, or agent.

On December 7, 2016, movants brought an action against Debtor, the hospital, and others in New Mexico's First Judicial District Court, styled *Melanie Chavez et al. v. PHC-Los Alamos Medical Center, Inc., et al*, No. D-101-CV-2016-02803 (the "State Court Action"). Currently, the only remaining defendants are Debtor and the hospital.

Movant's third amended complaint filed in the State Court Action asserts claims against Debtor for negligence and medical negligence. The complaint asserts claims against the hospital for negligence; medical negligence; and negligent hiring, supervision, and retention. Included in

---

[2] To the Court's knowledge, Leah survived her difficult birth and is healthy. In any event, Leah's health is not a subject of the state court lawsuit.

the claims against the hospital is the allegation that Debtor was the hospital's employee, servant, or agent, and therefore that the hospital is liable for any of Debtor's acts that are found to be negligent. Defendants deny liability. No claims are asserted against Debtor that would be nondischargeable under § 523(a).[3]

At all relevant times, Debtor carried medical malpractice insurance issued by Capson Physicians Insurance Company ("Capson"). Capson provided her with $1 Million in malpractice coverage per occurrence, with a cap of $3 Million for three occurrences.

When Debtor became aware of movants' claim, she notified Capson, who arranged for the Rodey Law Firm to defend her. The Rodey firm has represented Debtor since the beginning of the State Court Action.

On or about February 9, 2019, Debtor received the startling news from the Rodey firm that Capson's CEO had committed suicide, and that Capson was being taken over by the Texas Department of Insurance. Debtor testified that her response to this grim news was "panic."

On February 11, 2019, Judge Amy Clark Meachum, a district court judge of Travis County, Texas, issued an Agreed Order Appointing Rehabilitator, Permanent Injunction an Notice of Automatic Stay (the "Texas Stay Order"). The order stayed any proceeding against Capson's insureds for which Capson was liable under a policy of insurance.[4] There is no dispute that the State Court Action is such a proceeding.

When Debtor learned of Capson's financial problems and the Texas Stay Order, she promptly filed a motion in the State Court Action to honor the Texas court's stay. The state court

---

[3] Unless otherwise noted, all § references are to 11 U.S.C.
[4] The stay order is based on a Texas statute. *See* Tex. Ins. Code § 443.008(c).

held a hearing on the motion on February 19, 2019, and denied it. The state court recently denied Debtor's motion to reconsider.

Jury selection in the state court action is scheduled to begin May 13, 2019. Pre-trial preparation is underway.

A major problem caused by Capson's regulatory takeover is that Capson stopped paying the Rodey firm in February, 2019. It is not clear the Capson rehabilitation/receivership estate will pay any more defense costs. Rick Beitler, the Rodey partner in charge of defending Debtor, testified that medical malpractice cases such as the State Court Action depend heavily on expert witnesses, who are expensive. He testified that he had a number of potential expert witnesses and anticipated calling four or five of them at the trial. He testified that, although defense counsel will represent Debtor at the state court action trial if necessary, the Capson collapse has caused substantial upheaval in preparing Debtor's case. Expert witnesses have yet to be paid. His firm is owed a lot of money, an amount that would increase substantially if movants were allowed to proceed to trial against Debtor. Discovery is ongoing. Even if the Rodey firm goes through trial unpaid and pays all expert witness fees, which Mr. Beitler testified it would, the Rodey firm is behind where they normally would be, and Debtor's defense has been prejudiced.

Given the state court's decision not to honor the Texas Stay Order, it is very unlikely the Texas court would honor any judgment entered in the State Court Action against Debtor, particularly if that judgment were presented to the Texas court in an effort to collect from Capson.[5]

It is unknown at this time how much money, if any, might be available from the Capson rehabilitation proceeding to pay any valid claims movants may have against Debtor.

---

[5] *See* Tex. Ins. Code § 443.011(d) (actions taken in violation of the stay "may not be considered as evidence of liability or of the amount of damages . . . .").

Debtor filed this chapter 7 case on April 10, 2019. The case is filed as a "no-asset" case. In the normal course of events, a discharge would be entered, and the automatic stay terminated, on or about August 5, 2019. Proofs of claim are not needed in "no-asset cases" because there will not be anything to distribute to creditors. Thus, in no-asset cases there is no need to liquidate or determine claim amounts, including movants' claim against Debtor. Without assets to distribute, any such determination would be a waste of time and money for all concerned.

Movants filed their stay relief motion April 15, 2019. Debtor timely responded on April 29, 2019, and the Court held an expedited final hearing on May 1, 2019.

## II. DISCUSSION

A. Modifying the Automatic Stay "For Cause."

The automatic stay generally stays "litigation, enforcement of liens, and other actions, be they judicial or otherwise, which would affect or interfere with property of the estate, of the debtor, or which is in the custody of the estate." *In re Jim's Maint. & Sons Inc.*, 418 Fed. App'x 726, 728 (10th Cir. 2011) (quoting *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987)).

The automatic stay is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984).

Bankruptcy courts may modify the automatic stay for "cause." § 362(d)(1). The Tenth Circuit has stated that because "there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), overruled on other grounds, *TW Telecom*

*Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011), quoting *Pursifull*, 814 F.2d at 1504. Such a finding is considered a finding of fact, reversible only if "clear error" was committed. *In re JE Livestock, Inc.*, 375 B.R. 892, 893-94 (10th Cir. BAP 2007).

B.  The *Curtis* Factors.

Motions for relief from the automatic stay are often filed so litigation pending in another forum can proceed to judgment. In such situations, the Tenth Circuit "has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *In re Gindi*, 642 F.3d at 872. Courts often turn to 12 non-exclusive factors identified in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984), to assist in the analysis. The "*Curtis* factors" are:

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial;
12. The impact of the stay on the parties and the 'balance of hurt.'

40 B.R. at 799-800.

C.  The *Crespin* Factors.

The Court recently issued its opinion in *In re Crespin*, 581 B.R. 904 (Bankr. D.N.M. 2018), in which it identified certain of the *Curtis* factors, and certain other factors, that often are the most

relevant when determining whether to modify the automatic stay to allow a party to proceed with pending litigation in another court:

1. Whether the nonbankruptcy court is a specialized tribunal;
2. Whether granting stay relief would hinder or delay estate administration;
3. Whether the facts of the matter require a deviation from the Court's core function of allowing or disallowing claims;
4. Whether lifting the stay would promote judicial economy;
5. Whether it would be less expensive for the parties to litigate in bankruptcy court;
6. Whether lifting the stay would prejudice other creditors;
7. The movant's likelihood of prevailing in the litigation; and
8. Whether the "balance of the hurt" weighs in favor of or against stay relief.

D. <u>Weighing the Factors</u>.

The Court weighs the *Crespin* factors, and then the other *Curtis* factors, as follows:

| Factor | Discussion |
| --- | --- |
| 1. Specialized Tribunal | Favors lifting the stay. While state courts are not specialized tribunals, bankruptcy courts may not try tort personal injury claims. *See* 28 U.S.C. 157(b)(4). Although such claims can be tried by the United States District Court, the cumbersomeness of the process favors stay relief. |
| 2. Delay in Estate Administration | Weighs against lifting the stay. It appears likely that this case will be resolved with no need to liquidate movants' or other creditors' claims. Completion of the state court action, including any appeals, could take years. This case may be closed in three months. |
| 3. Whether the facts warrant deviating from the Court's claim allowance function | Weighs against lifting the stay. In the normal course of business, there would not be any claims filed, nor any claims allowance process. Nothing in the facts of this case or the State Court Action indicates a need to deviate from the norm. Rather, the facts indicate that lifting the stay would greatly burden the Debtor without benefiting movants. |
| 4. Judicial Economy | Weighs heavily against lifting the stay. There is no need to liquidate movants' claim against Debtor, and it would be very expensive to do so. Further, any judgment against Debtor would not be honored by the Texas court supervising the Capson rehabilitation. |
| 5. Litigation Expense | Weighs heavily against lifting the stay. Allowing the litigation to proceed against the Debtor in state court would be very expensive and unnecessary. There is no reason to put Debtor and/or her defense counsel to the expense of a defense if the claim will be discharged in August, 2019, and the amount does not need to be liquidated or determined. |

| 6. Prejudice to other creditors | Neutral. This case was filed as a no-asset chapter 7 bankruptcy case, meaning that creditors would get no recovery regardless of the outcome of the stay relief motion or the State Court Action. |
|---|---|
| 7. Likelihood of Success | N/A |
| 8. Balance of the Hurt | Weighs against lifting the stay. Through no fault of Debtor (or movants), Debtor is uninsured and apparently unable to pay any significant judgment or the costs of defense. The likelihood of movants collecting from Debtor is small, while the likelihood of Debtor incurring significant defense costs she cannot pay is large. If movants want to preserve their right to collect from Capson, they would have to comply with the Texas Stay Order and the rehabilitation proceedings. That would not be accomplished by granting stay relief. |

Weighing the other *Curtis* factors:

| 9. Whether the relief would result in a partial or complete resolution of the issues. | Weighs against lifting the stay. Given the apparent likelihood of a discharge, completion of this bankruptcy case would resolve all issues between movants and Debtor. The vicarious liability claim movants have against the hospital is discussed below. |
|---|---|
| 10. The lack of any connection with or interference with the bankruptcy case. | Neutral. Stay relief would not interfere with the bankruptcy case, although it would significantly burden the Debtor, without a corresponding benefit to movants. |
| 11. Whether the foreign proceeding involves the debtor as a fiduciary. | N/A |
| 12. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation. | Weighs heavily against lifting the stay. As discussed above, Capson is in rehabilitation, has stopped paying Debtor's defense counsel, and likely will be liquidated. It's ability to pay any valid claim is unknown. Capson definitely has not assumed full financial responsibility for defending the litigation. Further, if movants wish to collect from Capson, they must follow the rules of the Texas rehabilitation proceeding. Proceeding to trial against Debtor now would break, rather than follow, those rules. |
| 13. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. | N/A |
| 14. Whether the judgment claim arising from the foreign action is subject to equitable | N/A |

| | |
|---|---|
| subordination under Section 510(c). | |
| 15. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). | N/A |
| 16. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. | Neutral. This factor would favor lifting the stay if the claim needed to be liquidated. Because there appears to be no such need, the fact that the State Court Action is ready for trial is not relevant. |

Based on the foregoing discussion and the discussion in Section E below, the Court finds and concludes that the *Crespin/Curtis* factors weigh decidedly against granting the stay relief motion. Specifically, *Crespin/Curtis* factors 2, 3, 4, 5, 8, 9, and 12 weigh against granting the motion; factor 1 weighs in favor of granting the motion, and factors 6, 7, 10, 11, 13, 14, 15, and 16 are either neutral or do not apply.

E.  Movants' Concern About their Vicarious Liability Claim Against the Hospital Does Not Constitute "Cause" to Modify the Automatic Stay.

Movants argued at the final hearing that, absent stay relief, they would not be able to pursue their claim for vicarious liability against the hospital based on Debtor's alleged negligence. The Court has carefully considered the argument and finds that it does not constitute "cause" for stay relief. This is so because, inter alia, movants' claims against the hospital based on Debtor's alleged negligence are not necessarily stayed.

1.  The Scope of the Automatic Stay. 11 U.S.C. § 362(a) provides:

(a) Except as provided under subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . .operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been

-9-
Case 19-10841-t7    Doc 21    Filed 05/03/19    Entered 05/03/19 11:56:00 Page 9 of 13

> commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

The question is whether movants' pursuit of the vicarious liability claim against the hospital would be tantamount to a "continuation . . . of a judicial . . . proceeding *against the debtor* . . . ." (emphasis added). Plainly, movants cannot pursue their negligence claims against Debtor to judgment without violating the automatic stay. Does the stay also prevent movants from trying to prove all the elements of their vicarious liability claim against the hospital?

The law is clear that the automatic stay does not stay claims against nondebtor parties. *Globe Const. Co. v. Oklahoma City Housing* Authority, 571 F.2d 1140, 1143 (10th Cir. 1978) (decided under the Bankruptcy Act); *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194, 1196-97 (6th Cir. 1983) (collecting cases). *See also Baker v. Miller (In re Miller)*, 262 B.R. 499 (9th Cir. BAP 2001) (automatic stay does not protect debtor from complying with discovery requests, so long as the requests pertain only to claims against nondebtor parties).

2. <u>The Discharge Injunction Analogy</u>. Furthermore, there is a clear line of cases involving the discharge injunction that is analogous and helpful. The discharge injunction provides in relevant part:

> § 524 (a) A discharge in a case under this title—
> . . .
>    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recovery or offset any debt [discharged under section 727] as a personal liability of the debtor, whether or not discharge of such debt is waived;
> . . .
> (e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

In *Walker v. Wilde (In re Walker)*, 927 F.2d 1138 (10th Cir. 1991), the Tenth Circuit addressed whether the discharge injunction prevented a plaintiff from pursuing a claim against a nondebtor

-10-
Case 19-10841-t7    Doc 21    Filed 05/03/19    Entered 05/03/19 11:56:00 Page 10 of 13

when liability was predicated on the alleged wrongful action of the discharged debtor. The Court held:

> Section 524 further provides, however, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). It is well established that this provision permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when, as here, establishment of that liability is a prerequisite to recovery from another entity. [citations omitted] Logically enough, this exception to section 524(a)'s post-discharge injunction hinges "upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life." *In re Jet Florida Sys.,* 883 F.2d at 975; *see In re Mann,* 58 B.R. at 958; *In re McGraw,* 18 B.R. 140, 143 (Bankr. W.D. Wis. 1982) (suit against debtor may not result in collection efforts against debtor or his property).

*Walker's* holding recently was cited with approval in the unpublished case of *In re Rindlesbach,* 656 Fed. App'x 435, 427 (10th Cir. 2016).

That the discharge injunction does not prevent creditors from pursuing claims against third parties based on alleged wrongful conduct of discharged debtors is widely recognized. *See, e.g., Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53 (5th Cir. 1993); *In re Robben*, 562 B.R. 469 (Bankr. D. Kan. 2016); *In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 734 (7th Cir. 1991); *Green v. Welch*, 956 F.2d 30, 33-35 (2d Cir. 1992); *Musacco v. Walden*, 2016 WL 9777182, at *2 (D.N.M.); *In e Peterson*, 118 B.R. 801, 804 (Bankr. D.N.M. 1990).

A hypothetical illustrates the relationship between the *Walker* line of cases and the present stay relief motion. If for some reason the State Court Action did not go to trial in two weeks, as currently scheduled, but instead was tried *after* Debtor's discharge was entered, then *Walker* says that movants could pursue their vicarious liability claim against the hospital. Debtor would be at no risk of liability (because of the discharge), but movants would be permitted to try to prove that Debtor's actions caused damages for which the hospital was liable.

3. <u>Conditions Needed to Protect the Benefits of the Automatic Stay</u>. *Walker* makes clear that, post-discharge, Debtor faces the possibility of a trial of movants' claims against the hospital that would involve allegations she was negligent. Because of that, and because of *Lynch's* holding that the automatic stay does not extend to claims against nondebtors, the Court sees no reason why movants could not present the same evidence now. Movants could avoid violating the automatic stay by (i) acknowledging that all claims against Debtor are stayed, and that they are not proceeding to judgment against her;[6] and (ii) acknowledging that Debtor would not be bound under any preclusion principles (e.g. collateral estoppel, claim preclusion, res judicata, or issue preclusion). With these conditions satisfied, movants would not be proceeding against Debtor or estate property but trying to prove their claims against the hospital.[7]

### III. CONCLUSION

There is insufficient cause to modify the automatic stay so movants can try their claims against Debtor. Movants' stay motion therefore will be denied. This ruling does not prevent movants from proceeding against the hospital on a vicarious liability claim, so long as they do not violate the automatic stay in doing so, i.e., if they comply with the conditions discussed in section II(E)(3) above. A separate order will be entered.

---

[6] New Mexico law is clear that the doctrine of respondeat superior does not require an employee to be named as a defendant. *See Lopez v. Las Cruces Police Department*, 139 N.M. 730, 736 (Ct. App. 2006), *citing Baer v. Regents of the University of California*, 118 N.M. 685, 690 (Ct. App. 1994).

[7] The current record does not reveal what, if any, claims the hospital has asserted against Debtor. Those claims are stayed.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 3, 2019
Copies to: counsel of record